THE COURT.
The Municipal Code of the City of Fremont, section 5-1101 et seq., requires a license as a prerequisite for engaging in certain trades and occupations. Section 5-1127 thereof, applicable herein, provides: “For soliciting, canvassing, or taking orders, from house to house or from place to place or by telephone or by any other means of communication, for any goods, wares or merchandise or any article to be delivered in the future, or for services to be performed in the future, or making, manufacturing, or repairing of any article whatsoever for future delivery, twenty-five dollars per quarter per person. ...”
By other sections of said code, the engaging in such activities without the required license is proscribed as a misdemeanor.
The appellant, a resident of Newark, California, was an agent and representative of Stark Bros. Nurseries of Louisiana, Missouri, which company maintained no offices, warehouses, stock of merchandise, or other physical facilities of any nature within the State of California. Admittedly appellant solicited orders for its nursery products within the city limits of Fremont without paying the license fee required by the above-quoted code section. He was charged in two counts with violating the ordinance and was convicted on the first count of soliciting orders on December 22, 1959, without first having procured a license. He was fined $26.50, and this appeal followed, based upon an agreed statement.
The pertinent facts are as follows: On December 22, 1959, appellant called on a resident of Fremont for the purpose of selling nursery stock. Appellant offered to prepare, free of charge, a planting plan to enable the customer to visualize the plants which she might wish to order. Thereafter appellant prepared such a plan, presented it to the customer, and she placed an order for plants substantially' as indicated in the plan. The order was transmitted to Stark Bros. Nursery" in Missouri, the plants were shipped directly to the customer from Missouri, and a bill for the purchase price was mailed-to the customer from the company in Missouri. The appellant’s sole *Supp. 849 compensation was a commission paid to him directly by the company, based on a flat percentage of the gross sale.
Appellant contends that he was engaged in interstate commerce and that the ordinance could not be constitutionally applied to his activities. The question presented is whether the license fee levied by the above ordinance for soliciting orders can be required in this ease consistently with the commerce clause of the federal Constitution, article I, section 8.
In Nippert v. Richmond (1946), 327 U.S. 416 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.B. 844], the United States Supreme Court adhered to its former decisions in “the long line of so-called 1 drummer cases’ beginning with Robbins v. Taxing Dist. of Shelby County, 120 U.S. 489 [7 S.Ct. 592, 30 L.Ed. 694],” and held that a municipality could not impose a “fixed-sum” privilege tax on an interstate enterprise whose only contact within the city was the solicitation of orders and the subsequent delivery of goods at the end of an uninterrupted movement in interstate commerce, because such a tax had a substantial exclusionary effect on interstate commerce. See also West Point Wholesale Grocery Co. v. City of Opelika, Alabama (1957), 354 U.S. 390 [77 S.Ct. 1096, 1 L.Ed.2d 1420],
On the facts the instant case appears to come within the rule of the Nippert ease. This is admitted by respondent, who concedes that if appellant had merely solicited the order and had prepared no planting plan, he would not be subject to the imposition of the license fee. But respondent insists that the preparation and delivery of the planting plan was a local incident severable from the interstate commerce activity and therefore subject to the license tax. With this we cannot agree.
In the first place, the ordinance forbids the soliciting and taking of orders, and appellant was charged with a violation thereof in that he did “carry on a trade, calling, profession and occupation and did solicit, canvass, and take orders from house to house and from place to place, for goods, wares, merchandise and other articles to be delivered in the future and for services to be performed in the future, without having first procured a license.” The record does not disclose that the gratuitous preparation of a planting plan was enjoined by the ordinance.
Secondly, the Supreme Court of the United States has long recognized that certain aspects of interstate commerce are tax *Supp. 850 able by the States. Its pronouncements are briefly summarized in West Publishing Co. v. MoColgan (1946), 27 Cal.2d 705, 708 [166 P.2d 861], to the effect that “a state . . . may not exact a license tax for the privilege of carrying on interstate commerce . . . although it may tax the property used in, or the income derived from that commerce, so long as the taxes are not discriminatory. (Citing eases.) ”
All of the eases cited by respondent can readily be distinguished on their facts from the instant case. In Western Live Stock v. Bureau of Revenue (1938), 303 U.S. 250 [58 S.Ct. 546, 82 L.Ed. 823,115 A.L.R. 944], a 2 per cent tax on a magazine’s receipts from advertising was upheld even though some of the advertisers were outside the state. The Supreme Court said (p. 253) : “Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce, forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business.” In Williams v. Fears (1900), 179 U.S. 270 [21 S.Ct. 128, 45 L.Ed. 186], a tax on the business of hiring laborers to work outside the state was sustained. In Ware v. Mobile County (1908), 209 U.S. 405 [28 S.Ct. 526, 52 L.Ed. 855], a tax on persons engaged in buying and selling cotton for future delivery was sustained. In Browning v. Waycross (1914), 233 U.S. 16 [34 S.Ct. 578, 58 L.Ed. 828], a municipal occupation tax upon dealers or agents erecting within the city lightning rods which had been ordered from outside the state, was sustained. The court held that it was a local business and wholly separate from interstate commerce. In General Railway Signal Co. v. Virginia (1918), 246 U.S. 500 [38 S.Ct. 360, 62 L.Ed. 854], an “entrance fee” (for doing business in the state) required from a foreign corporation which installed automatic railway signal systems in Virginia was sustained. The court held that it was “local business” which was involved. In Utah Power & Light Co. v. Pfost (1932), 286 U.S. 165 [52 S.Ct. 548, 76 L.Ed. 1038], the production and generation of electric power were held to be a process distinct from its transmission to consumers in another state and therefore properly taxable. In Martin Ship Service Co. v. City of Los Angeles (1950), 34 Cal.2d 793 [215 P.2d 24], our Supreme Court sustained a city tax, measured by gross receipts, on the activities of local independent contractors engaged exclusively in furnishing maintenance and repair services to ships employed only in interstate and foreign commerce.
*Supp. 851 In National Schools v. City of Los Angeles (1955), 135 Cal.App.2d 311 [287 P.2d 151] (hearing denied by Supreme Court), the court was considering the applicability of a city license-fee ordinance to trade schools all of whose offices and places of business were within the city; each school conducted a correspondence-school business; more than 80 per cent of the “correspondence business” revenue was from students outside of California. The court held that the ordinance should be so construed as not to apply to the revenue received from the out-of-state students.
No eases have been cited or found which are precisely in point in that a court was called upon to determine whether an activity in the nature of a promotional scheme had such a local character as to be subject to taxation. In the foregoing cited cases, the valid tax was levied upon a local activity or the income derived from it. Thus, those cases are readily distinguished from this case, where the preparation of the planting plan produced no income and had no significance independently of the solicitation. We must conclude, in view of the many cases which have considered this type of problem, that the local activity must involve a substantial business or economic pursuit, carried on for profit, before it is subject to state or local taxation.
It was said in the Nippert case, supra (p. 423), that: “If the only thing necessary to sustain a state tax bearing upon interstate commerce were to discover some local incident which might be regarded as separate and distinct from the transportation or intercourse which is the commerce itself and then to lay the tax on that incident, all interstate commerce could be subject to state taxation and without regard to the substantial economic effects of the tax upon commerce. For the situation is difficult to think of in which some incident of an interstate transaction taking place within a State could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the States and necessarily involves ‘incidents’ occurring within each State through which it passes or with which it is connected in fact. And there is no known limit to the human mind’s capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as ‘separate and distinct’ or ‘local’, and thus achieve the desired result.” Here the local activity on which the tax is said to rest, was gratuitous. It was a simple *Supp. 852 selling device or promotional scheme which was initiated solely to promote a sale. It produced no revenue to serve as a measure of taxation. It must therefore be regarded as an integral part of interstate commerce and as governed by the rule of the Nippert case, supra.
\ The judgment of conviction is reversed.