[Crim. No. 5175.   First Dist., Div. Two.   Sept. 20, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HOOSHMAND MOBIN et al., Defendants and Appellants.

John M. Cranston, Gray, Cary, Ames & Frye and David B. Buerger for Defendants and Appellants.

James P. O'Drain, City Attorney, and Daniel J. Curtin, Jr., Deputy City Attorney, for Plaintiff and Respondent.

AGEE, J.—Defendants appeal following their conviction of violating section 7.40.030 of the Municipal Code of the City of Richmond by engaging in door to door solicitation of sales of cutlery without obtaining a written permit to do so from the chief of police, as required by said ordinance.

Since any cutlery sold was to be delivered to the customer by mail from the State of New York, the People concede that defendants were engaged solely in interstate commerce.

Defendants contend (1) that the requirement of a police permit constitutes an invalid and undue burden on interstate commerce and (2) that the ordinance fails to set forth reasonable standards by which the chief of police is to determine whether to issue the permit.

The California Constitution, article XI, section 11, provides: "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

The ordinance states its purpose to be as follows: "This section [7.40.030] is for the purpose of regulating peddlers and solicitors under the police powers of the City of Richmond to preserve the peace and general welfare of the community and is not for the purpose of revenue."

The People concede, however, that "the magic phrase 'police power' will not justify any enactment unduly burdening interstate commerce" and that the "enactment under the police power must be reasonable and bear some direct relationship to the protection of the citizens' health, morals, peace, and safety. . . ."

### Pertinent Provisions of Section 7.40.030

The application for the police permit requires the payment of "an application fee of five dollars" and the furnishing of the following information: name and description of applicant, his local and permanent address; description of the nature of his business and the goods or services to be peddled or solicited; the name and address of his employer, if any, together with credentials establishing the exact relationship between the applicant and such employer; the length of time for which the permit is desired; statement of convictions of any felony, or of any misdemeanor involving the violation of any municipal ordinance regulating or taxing any business or of any misdemeanor involving moral turpitude; "[s]uch other information as the Chief of Police shall deem necessary and relevant to a determination of whether a police permit should be issued pursuant to this section."

The chief of police is required to make, within a reasonable time, an investigation of the moral character and business responsibility of the applicant. He is required to disapprove the application if he finds that the applicant's moral character and business responsibility are unsatisfactory, or if the applicant has been convicted of a felony or of the stated type of misdemeanor.

In the absence of such ground for disapproval, the permit shall issue for a period of not longer than one year. It may be renewed upon payment of a $1.00 renewal fee. The permit must be carried when soliciting and must be exhibited upon the request of any person. The ordinance applies equally to *all* solicitors, whether engaged in intrastate or interstate commerce.

*Issue:* Does section 7.40.030, as applied to the defendants, impose an invalid or undue burden on interstate commerce (U.S. Const., art. I, § 8)?

■ The general rule is well established that a municipality may in the exercise of its police power enact reasonable regulations relating to the activities of those persons who engage in door to door solicitation within its boundaries. (*In re Hartmann*, 25 Cal.App.2d 55, 60-61 [76 P.2d 709]; *Breard* v. *Alexandria*, 341 U.S. 622, 640-641 [71 S.Ct. 920, 95 L.Ed. 1233, 35 A.L.R.2d 335]; *Town of Green River* v. *Fuller Brush Co.*, 65 F.2d 112, 115 [88 A.L.R. 177]; Rhyne, Municipal Law, "Registration, Permits and Licenses" §§ 26-48, pp. 599-600; 5 McQuillin, Municipal Corporations, pp. 665-666.)

■ Such regulations may include the requirement that the solicitor obtain a permit from the chief of police (*In re Hartmann, supra*; Rhyne, Municipal Law, p. 599).

■ However, defendants contend that the $5.00 "application fee" invalidates the permit requirement because such fee is in effect a flat rate tax on the business of soliciting orders for future shipment in interstate commerce. (*People* v. *Cole*, 187 Cal.App.2d Supp. 847 [9 Cal.Rptr. 788]; *Nippert* v. *City of Richmond* (Va.) 327 U.S. 416 [66 S.Ct. 586, 90 L.Ed. 760, 162 A.L.R. 844].)

The People, on the other hand, contend that the purpose of the $5.00 charge is not to raise revenue or exact a tax but to defray the expense of the investigation of the applicant and the issuance of the permit. We think that this is the proper interpretation of the provision in question. (Cf. *Union Brokerage Co.* v. *Jensen*, 322 U.S. 202, 211-212 [64 S.Ct. 967, 88 L.Ed. 1227, 152 A.L.R. 1072]; *Sprout* v. *South Bend*, 277 U.S. 163, 169 [48 S.Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45].)

Rhyne on Municipal Law states the rule as follows: "In the exercise of the municipal police power, municipalities may impose fees for the issuance of licenses to peddlers and other itinerant vendors provided the license fee has a reasonable relation to the expense of investigation, issuing the license, or regulating and supervising the activities embraced within the purview of the license." (P. 599.)

■ McQuillin on Municipal Corporations states that the imposition of a fee such as that involved herein "is not an unconstitutional interference with interstate commerce, and is valid, . . . where the purpose of the license, fee or exaction is to make the exercise of the police power effective by contributing to its administration or financing, and where the ordinance or statute is not discriminatory as against nonresidents or interstate commerce." (Vol. 5, p. 665.)

Defendants express the fear that the cumulative effect of

the $5.00 charge, if similar ordinances were to be adopted by a large number of cities, "could effectively stop all [of this type of] interstate commerce." There is nothing in the record upon which we could come to any such conclusion. However, upon a proper showing, this matter is certainly an element to be considered in determining the *undue* burden issue. (See discussion in *Nippert* v. *City of Richmond, supra,* pp. 429-431.)

*Issue*: Does section 7.40.030 set forth reasonable standards by which the chief of police is to determine whether to issue the permit? We think it does.

Defendants' first attack is upon the "such other information" provision which we quoted above in listing the pertinent provisions of the section. The defendants say that this might call for "a detailed statement of every act of the applicant for the previous ten years" or "anything else which the Chief of Police believes to be 'necessary and relevant.'"

The objection is not well taken. The rule of *ejusdem generis* is particularly applicable to criminal statutes. (*People* v. *Thomas,* 25 Cal.2d 880, 889 [156 P.2d 7].) The provision attacked is the last of seven items, the other six are specific. It is a classic case for the application of the rule. The police chief can ask only for "such other information" as is similar in nature to the six specifics.

The next attack is upon the provision that the chief of police shall make his investigation "within a reasonable time after the filing of each such application," defendants stating that "he might take two weeks or two months to investigate the entire life history of the applicant." In the context used, "reasonable time" would seem to mean only that time necessary to diligently conduct the investigation. We see no merit to defendants' conjecture.

Defendants' next objection is that "the ordinance provide[s] in effect that the Chief of Police shall deny the permit if the applicant's moral character and business responsibility are unsatisfactory, and shall grant the permit if such character and responsibility are satisfactory. The sections leave entirely to the Chief's discretion the determination of what is 'unsatisfactory' or 'satisfactory.'" We do not agree. The chief of police can make his determination only upon *objective* facts, not by any whim or subjective reaction to the applicant.

A strikingly similar ordinance was subjected to the same criticism in *Moyant* v. *Borough of Paramus* (1959) 30 N.J.

528 [154 A.2d 9], wherein the Supreme Court of New Jersey stated: "A standard will not be deemed inadequate simply because the discretion might be abused. Arbitrary action by the official will not be anticipated. . . . We believe the norm of 'satisfactory' as to an applicant's 'character and business responsibility' is minimally sufficient. It is difficult to be much more specific in situations like this one. The police chief can, of course, reach his conclusion only on objective facts and not by mere whim. Considering the whole ordinance and its purpose, we conceive that, unless the application or the investigation discloses something tangible by way of a conviction for a crime involving moral turpitude, prior violations of canvassing ordinances, a determination of previous fraudulent acts or conduct, a record of continual breaches of solicited contracts, concrete evidence of bad character, or the like, the applicant must be found to be satisfactory."

*In re Porterfield*, 28 Cal.2d 91 [168 P.2d 706, 167 A.L.R. 675], involves a city ordinance which prohibited the solicitation of membership in a dues-paying organization, such as a labor union, without obtaining a license issued by the city council.

Our Supreme Court struck down the ordinance because of the conditions imposed therein, stating: "We are of the opinion that *on the face of the ordinance* the indefinite standards which it enunciates provide a mechanism for the deprival of constitutional rights, not only on the basis of the guarantees applicable to free speech but also on the basis of those protecting the right to engage in lawful fashion in a lawful activity. . . .

"[E]ven if we indulge to its fullest extent the presumption urged by respondent [that the council will perform its duty in a fair and impartial manner] the ordinance remains *void on its face* because by necessary implication it directs the city council to deny a license unless the council 'is satisfied that said applicant . . . will *not* resort to . . . threat, menace, coercion, intimidation . . . in his proposed work of solicitation,' means to which, as expressed or applied through strikes, picketing, or other lawful concerted action of union members, an applicant has a *constitutionally protected right* to resort. . . .

"It is too firmly established to merit much more than the mere enunciation of the fact that not all conduct embracing or effecting compulsion, coercion, intimidation, threats, and menace is unlawful. The means employed and the object to

be attained may be entirely lawful, moral and just, even though the conduct has effected such incidental results and has attained its objective through them. . . . Particularly in the fields of labor union controversies with employers and in competition among the unions themselves has it been recognized that physically peaceable compulsion, coercion, intimidation, and threats may go to make up lawful moral and social pressure as against both employers and nonmember employes.'' (Italics added.)

The Supreme Court further held that a severability clause could not sustain a conviction based on the entire ordinance. It stated: ''The provisions of the ordinance left after severance would then require a showing merely as to the good moral character of the applicant. The potential severability of the ordinance, however, can have no effect upon the instant matter. As far as petitioner is concerned the existence of the statute as a whole was an operative fact. The consequences of its existence as such cannot be ignored. In order for petitioner to have secured a license he would have had to have complied with the terms of the ordinance as written.'' (P. 120.)

*Porterfield* intimates, in the portion of the opinion just quoted, that the requirement of ''a showing merely as to the good moral character of the applicant'' would not have been cause for invalidating the ordinance.

In the instant case, the ordinance requires the issuance of the permit if ''the applicant's moral character and business responsibility are found to be satisfactory, and the applicant has not been convicted of a felony, or of a misdemeanor [of the type described hereinabove] . . . .''

We find nothing in *Porterfield* which would justify a holding that the instant ordinance is ''void on its face.'' We further find that the standards set forth in said ordinance are reasonable and are sufficiently clear and definite.

Defendants have requested that we also rule upon the constitutionality of section 7.40.040 of the Richmond Municipal Code, although admitting that they were not charged with violating this section and that ''technically the validity of that section is not directly in issue . . . .''

Section 7.40.040 requires that a solicitor for a nonresident business, who demands a payment or deposit in advance of delivery, furnish a $500 bond to the tax collector. Such bond is to be conditioned upon delivery of the ordered goods or refund of any advance payment and is to run to the benefit of anyone aggrieved by the action of such solicitor.

Section 7.40.030 (police permit) applies to *all* door to door solicitors. There is nothing in that section which requires the furnishing of a bond in order to obtain a permit from the chief of police.

Section 7.40.040 becomes effective only when the permittee is *not,* as worded by the section, an "authorized agent or representative of a regularly established business in the City."

A determination of the validity of section 7.40.040 would not in any way affect our decision herein and we therefore do not express an opinion thereon.

The order granting probation following the conviction of defendants of a violation of section 7.40.030 of the Municipal Code of the City of Richmond is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 16, 1965.