[Civ. No. 39964. First Dist., Div. One. Aug. 24, 1977.]

JAMES C. AARON et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE SAN JOSE-MILPITAS
JUDICIAL DISTRICT, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon, Michael G. Millman and Jaime Alcabes, Deputy State Public Defenders, Sheldon Portman, Public Defender, and Richard C. Neuhoff, Deputy Public Defender, for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Peter G. Stone, City Attorney, and Royce A. Fincher, Jr., Deputy City Attorney, for Real Party in Interest and Respondent.

## Opinion

**SIMS, Acting P. J.**—Petitioners, who sought a writ of prohibition to prohibit their prosecution for violation of a municipal ordinance which outlawed soliciting without a license, have appealed from the judgment (order signed and filed August 2, 1976) denying their petition.[1] ■ (See fn. 2.) Their standing to challenge the constitutionality of the local ordinance is not challenged.[2] Since the attack on the ordinance followed the overruling of the petitioners' demurrers to complaints filed against them, there is no factual setting concerning the application of the ordinance. Review is necessarily limited solely to the constitutionality of the provisions of the ordinance as they were adopted and in effect, not as they might actually be applied.

Petitioners contend that enforcement of the ordinance constitutes a denial of due process of law in that administrative discretion to grant or deny a permit is couched in unconstitutionally vague terms. They also attack the ordinance because its exemptions deny them equal protection of the laws, and because it unconstitutionally requires, as a condition of the investigation for a permit, that the applicant waived his Fourth Amendment rights. (See *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 271 [57 Cal.Rptr. 623, 425 P.2d 223].) We find that the ordinance, as enacted and as it existed at the time of its attempted enforcement against petitioners,[3] was unconstitutionally vague on its face.

---

[1](See Code Civ. Proc., §§ 904.1, subd. (a), 1604 and 1109; *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 235 [111 Cal.Rptr. 539]; *Mellinger* v. *Municipal Court* (1968) 265 Cal.App.2d 843, 845 [71 Cal.Rptr. 535]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 178, p. 3938; and Witkin, Cal. Criminal Procedure (1963) § 782, p. 758.)

[2]A person faced with an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license, and he is not precluded from attacking its constitutionality because he has not applied for a permit. (*Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 151, and cases cited fn. 2 [22 L.Ed.2d 162, 167, 89 S.Ct. 935]; *Freedman* v. *Maryland* (1965) 380 U.S. 51, 55-56 [13 L.Ed.2d 649, 652-653, 85 S.Ct. 734]; *Staub* v. *City of Baxley* (1958) 355 U.S. 313, 318-319 [2 L.Ed.2d 302, 308-309, 78 S.Ct. 277]; and *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 687-688 [68 Cal.Rptr. 721, 441 P.2d 281].)

[3]We take judicial notice, as requested by petitioners, that on October 12, 1976, the city council repealed the sections of the municipal code under which petitioners are being prosecuted and enacted new provisions. Since we must reverse the judgment with directions to issue a peremptory writ of prohibition, we do not consider whether the repeal of the existing ordinance and enactment of a new ordinance on the same general subject matter either required the dismissal of the pending proceedings or permitted their continuance. (See Gov. Code, § 9608. Cf. *Spears* v. *County of Modoc* (1894) 101 Cal. 303, 305-307 [35 P. 869], and *People* v. *DeFerrari* (1923) 63 Cal.App. 671, 673 [219 P. 1048], with *In re Dapper* (1969) 71 Cal.2d 184, 188-190 [77 Cal.Rptr. 897, 454 P.2d 905]

The judgment must be reversed with directions to issue a peremptory writ as prayed for by petitioners. We, therefore, do not address the remaining issues raised by petitioners.

The ordinance challenged here required that anyone soliciting anything of value on the representation that it is for a charitable purpose must first obtain a permit: "§ 4320. *Permit Required.* No person by house to house canvass, or in residences, apartment houses or hotels, or business buildings, or in any public building or place, or on the public streets in the City, either personally or by telephone, or in any other manner, shall solicit memberships, advertising, money, property, or anything of value or financial assistance of any kind, or sell any article, or service, or tickets of admission to any performance, athletic event, card party, benefit, lecture, picnic, dance, ball, or other place of amusement or entertainment whatsoever, on representation, that such solicitation is for a charitable, patriotic or philanthropic purpose, or for the benefit of any person, unless such person shall first have obtained a permit therefor from the San Jose Public Solicitation Commission." (San Jose Mun. Code, § 4320.) Sections 4321 to 4327 listed the information required in the application for such a permit, and section 4328 made the application public record. Section 4329 allowed waiver of the requirements in certain cases: "§ 4329. *Waiver of Requirements.* The San Jose Public Solicitation Commission may, in its discretion, waive any or all of the requirements of Sections 4321 to 4327 hereof, where the applicant is known to be a bona fide charitable organization of recognized integrity and long standing reputation as such." Finally, section 4330 provided for investigation of the applicant: "§ 4330. *Investigation. Issuance of Permit.* Upon receipt of the application as provided for in Sections 4321 to 4327, the San Jose Public Solicitation Commission shall make such investigation as may be necessary in regard thereto, and if satisfied that such purpose or object of such solicitation is worthy and not incompatible with public interest, and that the applicant and other persons to be engaged in such solicitation are of good character, and that the total costs and expenses of such solicitation are not disproportionate to the sum proposed to be collected thereby, and that a permit should be issued therefor, the Commission shall issue such permit for such period not to exceed one year as in the opinion of the Commission is proper; provided, that said permit may include the applicant, together with its agents and representatives named in said application. The San Jose Public Solicitation

[cert. den. (1970) 397 U.S. 905 (25 L.Ed.2d 90, 90 S.Ct. 906)]; and *People* v. *Orozco* (1968) 266 Cal.App.2d 507, 515-516 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429]; and see 1 Witkin, Cal. Crimes (1963) §§ 35 and 36, pp. 39-40, and (1975 supp.) *id.,* pp. 47-48.)

Commission shall issue or refuse in writing to issue said permit within ten days following the meeting of said Commission at which such application is considered."

I

Preliminarily we examine the petitioners' contention that the ordinance encroaches on First Amendment rights and must be evaluated from the viewpoint of preventing any impingement on the rights of freedom of association, speech and religion. As pointed out in *Ashton* v. *Kentucky* (1966) 384 U.S. 195 [16 L.Ed.2d 469, 86 S.Ct. 1407], "Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer. We said in *Cantwell* v. *Connecticut, supra* [(1940) 310 U.S. 296 (84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352)], that such a law must be 'narrowly drawn to prevent the supposed evil,' 310 U.S., at 307, and that a conviction for an utterance 'based on a common law concept of the most general and undefined nature,' *id.,* at 308, could not stand." (384 U.S. at pp. 200-201 [16 L.Ed.2d at pp. 472-473]. See also *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 432 and 438 [9 L.Ed.2d 405, 417 and 421, 83 S.Ct. 328]; and *Edwards* v. *South Carolina* (1963) 372 U.S. 229, 237 [9 L.Ed.2d 697, 703, 83 S.Ct. 680].)

Insofar as those soliciting for charitable, patriotic or philanthropic purposes or for personal benefit are entitled to the protection of the First Amendment, the following rules apply, "In determining whether a statute regulating speech violates the First Amendment, we must weigh the state's interest in maintaining peace and order in the streets and other public places against the individual's right to freedom of speech and assembly. When this balance is struck, statutes requiring licenses for parades and demonstrations will not offend the Constitution if they regulate only the time, place, manner and duration of the marches and if they are fairly administered by officials within the range of narrowly limited discretion. On the other hand, any procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed." (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 869-870 [94 Cal.Rptr. 777, 484 P.2d 945]. Accord *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 84 [112 Cal.Rptr. 777, 520 P.2d 1].)

■ It is clear that the cloak of the First Amendment envelops free speech, free assembly, and freedom to petition for redress of grievances. (*Edwards* v. *South Carolina, supra,* 372 U.S. 229, 235 [9 L.Ed.2d 697, 701].) It embraces the right to associate for the advancement of beliefs and ideas, and to engage in litigation for political purposes. (*Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610 [48 L.Ed.2d 243, 96 S.Ct. 1755]; *N.A.A.C.P.* v. *Button, supra,* 371 U.S. 415, 429-431 [9 L.Ed.2d 405 415-417]), and as well the right to address employees for the purpose of securing their membership in a union. (*Staub* v. *City of Baxley* (1958) 355 U.S. 313, 321-322 [2 L.Ed.2d 302, 310-311, 78 S.Ct. 277]; *Thomas* v. *Collins* (1945) 323 U.S. 516, 532-538 [89 L.Ed. 430, 441-445, 65 S.Ct. 315]; and *In re Porterfield* (1946) 28 Cal.2d 91, 104-110 [168 P.2d 706, 167 A.L.R. 675].) It expressly covers freedom of religion, and precludes censorship of the right to secure support for one's religion, by arbitrary control of solicitation. (*Cantwell* v. *Connecticut, supra,* 310 U.S. 296, 303-307 [84 L.Ed. 1213, 1217-1220].)

Petitioners seek to bring themselves within the freedom of religion protection of *Cantwell* on the theory that although the ordinance is silent as to solicitation for religious purposes, the general reference to a charitable purpose embraces any religious purpose. (See *Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644, 649 [298 P.2d 1]; *Estate of Henderson* (1941) 17 Cal.2d 853, 857 [112 P.2d 605]; and *La Societe Francaise* v. *Cal. Emp. Com.* (1943) 56 Cal.App.2d 534, 542 [133 P.2d 47].) The case was presented in the municipal court in demurrer. Although there is a suggestion in the record that there was some stipulation in that court concerning the organization to which the petitioners belonged, it was never a part of the record in the superior court, and petitioners have so conceded. There is, therefore, no basis to find that this case itself involves religious freedom. We will not presume in this case that the ordinance itself would be given such an interpretation in other cases as to impinge on recognized religious liberties. Moreover, as noted below, *Cantwell* does recognize a limited right to control solicitation for religious purposes.

The right to solicit funds or property was not involved in *Thomas* v. *Collins, supra,* 323 U.S. at page 535 [89 L.Ed. at page 443]. In that respect the court stated: "Once the speaker goes further, however, and engages in conduct which amounts to more than the right of free discussion comprehends, as when he undertakes the collection of funds or securing subscriptions, he enters a realm where a reasonable registration or identification requirement may be imposed. In that context such

solicitation would be quite different from the solicitation involved here. It would be free speech plus conduct akin to the activities which were present, and which it was said the State might regulate, in *Schneider* v. *State, supra* [(1939) 308 U.S. 147, 165 (84 L.Ed. 155, 166, 60 S.Ct. 146)], and *Cantwell* v. *Connecticut, supra* [310 U.S. 296, 306-307 (84 L.Ed. 1213, 1219-1220)]. That, however, must be done, and the restriction applied, in such a manner as not to intrude upon the rights of free speech and free assembly." (323 U.S. at pp. 540-541 [89 L.Ed. at pp. 445-446].)

In *Schneider* v. *State, supra,* the court had lumped charitable solicitation with solicitations in the name of religion as follows: "Conceding that fraudulent appeals may be made in the name of charity and religion, we hold a municipality cannot, for this reason, require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be carried to the homes of citizens; some persons may, while others may not, disseminate information from house to house. Frauds may be denounced as offenses and punished by law. Trespasses may similarly be forbidden. If it is said that these means are less efficient and convenient than bestowal of power on police authorities to decide what information may be disseminated from house to house, and who may impart the information, the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press." (308 U.S. at p. 164 [84 L.Ed. at p. 166].) The public interest in the benefits to society from charitable works would appear to give the solicitor of funds for such purposes a status equal to that of the classes reviewed above, rather than reducing him to the status of a commercial door-to-door salesman, whose right to sell his products may not rise to equal dignity with religious and political freedom.

In this state the following rule applies: "That reasonable regulation of charitable organizations is within a government's police power has long been established; such regulation does not intrude upon the right of free speech. (*Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 245-246 . . ., *Matter of Application of Dart,* 172 Cal. 47 . . .) 'The occupation of soliciting contributions to charitable purposes is clearly so far subject to the police power, that it may be regulated by laws or ordinances providing for a reasonable supervision over the persons engaged therein, and for the application and use of the contributions received to the purposes intended, in order to prevent unscrupulous persons from obtaining money, or other things, under the pretense that they were to be applied to charity, and to prevent the wrongful diversion

of such funds to other uses, . . .' (*Matter of Application of Dart, supra,* p. 56.)" (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 549-550 [63 Cal.Rptr. 21, 432 P.2d 717]. See also *Amer. Mission Army* v. *City of Lynwood* (1956) 138 Cal.App.2d 817, 819-820 [292 P.2d 533].) In that case the court recognized the state's paramount interest in preventing fraud. It upheld a statute which prohibited the solicitation of funds by or for one purporting to furnish guide dogs for the blind unless the furnisher holds a valid and unimpaired license from the board administering that field against attack by an institution whose license was impaired because it had no trainer. The court stated, "Defendants correctly note that without a trainer the school cannot accomplish its charitable purpose and that to permit it to solicit funds for a purpose it may find impossible to achieve can result in a fraud on the public, however unintentional on the part of the school." (67 Cal.2d at p. 550.)

In *Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704], the court held that a religious organization which carried on a business which fell within the regulations applicable to junk dealers and second hand dealers was subject to those regulations, and that insofar as it solicited funds for charitable purposes it was subject to provisions of an ordinance which were designed primarily to secure information that would assist the public in judging the nature and worthiness of the cause for which solicitation was made, and to insure the presentation of such information to prospective donors. Unlike the ordinance under consideration, the department administrating the ordinance was given no authority to withhold identification cards if the requisite information was given (27 Cal.2d at pp. 237-239). The court stated, "The board has no discretion to withhold a license if the applicant's good character and reputation and his financial responsibility are established and the required bond is filed. The board is not free to deny licenses, but must act reasonably in the light of the evidence presented. [Citations.]" (*Id.,* p. 249.) It was only after establishment "of unfair, unjust, inequitable or fraudulent practices of solicitation" that permission to solicit would be withdrawn (*id.,* p. 249). There was no such arbitrary presolicitation control as in the instant case.[4]

---

[4]In *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460 [171 P.2d 8], a majority of the court sustained a provision of the same ordinance which required express permission to solicit by means of a box or receptacle in a public place. The court interpolated the following into the ordinance: ". . . the denial of a permit is warranted only if the information furnished to the board discloses fraud or if the solicitation as planned would interfere with the public convenience and safety." (28 Cal.2d at p. 472.)

The distinction is well pointed out by Justice Henshaw in *Matter of Application of Dart* (1916) 172 Cal. 47 [155 P. 63] which, as we have noted, was cited in the *Eye Dog Foundation* case. He stated, "Can the municipal authorities of a city arbitrarily say what person or what institution may or may not engage in charitable work dependent wholly or in part upon voluntary contributions from the public? Unhesitatingly we answer that this cannot be done, that it constitutes an attempt to use the police power in an arbitrary, unreasonable, and oppressive manner. It necessarily contains an assertion of the power to prohibit and suppress vocations and occupations which, entirely aside from their religious character, are from a worldly point of view in and of themselves not only harmless but positively beneficial to humanity. The power to pass reasonable regulations in such a case bears no relationship to the power to prohibit or suppress. [Citations.]" (172 Cal. at pp. 53-54.) The majority of the court concurred in striking down the ordinance, and Justice Shaw, after recognizing the general rule applied in the *Eye Dog Foundation* case stated, "If the ordinances in question here were reasonably appropriate for the attainment of these objects, there could be no valid objection to them based on the ground that they deprived persons of liberty, or unduly restricted them in the pursuit of happiness. But they do not merely empower the Municipal Charities Commission to inquire or examine into the character of persons soliciting for charity and withhold permits from all who do not come within fixed standards of character and fitness. They give the commission absolute and arbitrary power to forbid any person from soliciting for charity, regardless of his personal character, worth, or fitness. No standard of character or fitness is set by which the commission is to be guided in giving or withholding permits. The only thing required is that the commission shall find that the 'object of said solicitation is worthy and meritorious.' Persons of the highest character, desiring to solicit for a worthy cause, might be refused a permit for no reason except the arbitrary will of the commission. Every person has the right, under our constitution, and perhaps without its guarantee, to solicit contributions for a worthy charitable purpose, provided he acts in good faith and honestly applies them to that purpose. The ordinances give the commission power to deprive persons of that right without cause or reason. To the extent that they give this arbitrary power they are contrary to the constitution and void." (*Id.*, at pp. 56-57.) Those principles are controlling here.

*In re Porterfield, supra,* 28 Cal.2d 91, recognizes that when speech is accompanied by solicitations for the purpose of collecting funds there is a public interest which justifies some regulation. The court stated, "The

freedom of speech and of the press protected by the constitutional guaranties includes in the main, it has been said, freedom of expressions on political, sociological, religious, and economic subjects, not commercial activities to which speech is only an incident or means. [Citations.] However, as pointed out in the recent case of *Thomas* v. *Collins* (1945) 323 U.S. 516 . . . the right of free speech has not been confined to any field of human interest and it cannot be said that the safeguards of the First Amendment (or the Fourteenth as it incorporates the First) are wholly inapplicable to business or economic activity. [Citation.] In the last analysis the extent of permissible regulation of business or economic activity depends upon the balancing of social interests and the facts of any given case. [Citation.]

"The need for such legislation is primarily to be decided by those who enact it. A very wide discretion as to what is needful or proper for the purpose is necessarily committed to the legislative body. [Citations.] But because the rights of citizens both to free speech and to engage in a business or follow a profession are constitutionally protected [citations], it is always a judicial question whether any particular regulation of such rights is a valid exercise of legislative powers." (28 Cal.2d at pp. 101-102.)

The highest court in the land, in an opinion subscribed by five justices, recently collated its views as follows: "We are not without guideposts in considering appellants' First Amendment challenge to Ordinance No. 598A. 'Adjustment of the inevitable conflict between free speech and other interests is a problem as persistent as it is perplexing.' *Niemotko* v. *Maryland,* 340 U.S. 268, 275 (1951) (Frankfurter, J., concurring in result), and this Court has in several cases reviewed attempts by municipalities to regulate activities like canvassing and soliciting. Regulation in this area 'must be done, and the restriction applied, in such a manner as not to intrude upon the rights of free speech and free assembly,' *Thomas* v. *Collins,* 323 U.S. 516, 540-541 (1945). But in these very cases the Court has consistently recognized a municipality's power to protect its citizens from crime and undue annoyance by regulating soliciting and canvassing. A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interests without running afoul of the First Amendment." (*Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610, 616-617 [48 L.Ed.2d 243, 250-251], followed by comment on *Lovell* v. *Griffin* (1938) 303 U.S. 444, 451 [82 L.Ed. 949, 953, 58 S.Ct. 666]; *Schneider* v. *State, supra,* 308 U.S. 147, 158 and 164 [84 L.Ed. 155, 163 and 166]; *Cantwell* v. *Connecticut, supra,* 310 U.S. 296, 306 [84 L.Ed.

1213, 1219]; *Martin* v. *Struthers* (1943) 319 U.S. 141 [87 L.Ed. 1313, 63 S.Ct. 862].) The majority noted that in each of those cases the ordinance had been held invalid, but it approved and apparently applied the following statement from *Cantwell* v. *Connecticut, supra,* "Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." (310 U.S. at p. 306 [84 L.Ed. at p. 1219]. See 425 U.S. at pp. 618-619 [48 L.Ed.2d at pp. 251-252].)

In *Cantwell* v. *Connecticut*, as in this case, the legislation under attack covered solicitation for charitable or philanthropic causes but also included religious causes. It required approval by a public body. The case was decided on the principle that the permit system constituted a censorship of religious freedom. Nevertheless, the case is recognized as contributing to the rule enunciated in *Staub* v. *City of Baxley, supra,* as follows: "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." (355 U.S. at p. 322 [2 L.Ed.2d at p. 311]. See also *Kunz* v. *New York* (1951) 340 U.S. 290, 295 [95 L.Ed. 280, 284-285, 71 S.Ct. 312]; *Saia* v. *New York* (1948) 334 U.S. 558, 560 [92 L.Ed. 1574, 1577, 68 S.Ct. 1148]; *Schneider* v. *State, supra,* 308 U.S. 147, 164 [84 L.Ed. 155, 166]; and *Lovell* v. *Griffin* (1938) 303 U.S. 444, 450-452 [82 L.Ed. 949, 952-954, 58 S.Ct. 666].) The rule has received recognition and application in this state. (See *Dulaney* v. *Municipal Court, supra,* 11 Cal.3d 77, 86; *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661 [97 Cal.Rptr. 320, 488 P.2d 648] [cert. den. (1972) 404 U.S. 1038 (30 L.Ed.2d 729, 92 S.Ct. 710)]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 691-693 [68 Cal.Rptr. 721, 441 P.2d 281].)

Our inquiry is therefore directed to the terms of the ordinance itself.

II

The fountainhead for the test of vagueness is *Connally* v. *General Const. Co.* (1926) 269 U.S. 385 [70 L.Ed. 322, 46 S.Ct. 126], where the court laid down the following test: "That the terms of a penal statute

creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. [Citations.]" (269 U.S. at p. 391 [70 L.Ed. at p. 328]. See also *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257].)

In *Hynes* v. *Mayor of Oradell, supra,* the court (seven judges concurring) struck down the ordinance, which only required those covered by it to "notify the Police Department, in writing for identification only," because the coverage of the ordinance was unclear and because it did not sufficiently specify what those within its reach must do in order to comply (425 U.S. at pp. 620-622 [48 L.Ed.2d at pp. 252-254]). With respect to the former, the opinion states: "[I]t does not explain, for example, whether a '*recognized* charitable cause' means one recognized by the Internal Revenue Service as tax exempt, one recognized by some community agency, or one approved by some municipal official." (*Id.,* p. 621 [48 L.Ed.2d p. 253].) ■ So here the requirement in section 4330 that the commission be satisfied "that such purpose or object of the solicitation is *worthy and not incompatible with the public interest*" is equally vague. (Italics added.) The ordinance is similar to the test "shall consider the character of the applicant, the nature of the business of the organization for which members are desired to be solicited, and its effects upon the general welfare of citizens of the City . . ." found and condemned in *Staub* v. *City of Baxley, supra,* 355 U.S. 313, 321-332 [2 L.Ed.2d 302, 310-311]. (See also *Gelling* v. *Texas* (1952) 343 U.S. 960 [96 L.Ed. 1359, 72 S.Ct. 1002], Frankfurter, concurring, " 'of such character as to be prejudicial to the best interests of the people of the City.' ")

The same considerations apply to the requirement "that the applicant and other persons engaged in such solicitation are of good character." In *Perrine* v. *Municipal Court, supra,* the court stated, "Statutes which authorize public officials to license conduct protected by the First Amendment must set forth definite, objective guidelines for the issuance of such licenses. [Citations.] Accordingly statutes which have empowered public officials to exercise their discretionary authority with respect to First Amendment activities in light of the applicant's 'good character' [citations], the anticipated effect of his conduct upon the 'public welfare or morals' [citations] . . . have been held to be unconstitutionally vague

and overbroad. The danger of censorship and arbitrary suppression inherent in the employment of such imprecise standards is so great that the voiding of these regulations is required even in the absence of proof of actual discrimination [citations]." (5 Cal.3d at pp. 661-662.)

*In re Porterfield, supra,* is a case in which the court found that the arbitrary power in the city council to determine whether the applicant is of "good moral character" (cf. here "of good character") rendered the ordinance unconditionally indefinite and vague (28 Cal.2d at pp. 110-112). It rejected the concept, also advanced here by the city, that the court should presume that the licensing authority would perform its duty in a fair and impartial manner. (28 Cal.2d at p. 112. See also *Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610, 622 [48 L.Ed.2d 243, 253]. Cf. *People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 126-128 [294 P.3d]; *In re Flaherty* (1895) 105 Cal. 558, 562 [38 P. 981]; *People* v. *Mobin* (1965) 237 Cal.App.2d 115, 119-121 [46 Cal.Rptr. 605]; and *In re Hartmann* (1938) 25 Cal.App.2d 55, 60 [76 P.2d 709].)

We also note that although the government may have an interest in establishing the financial integrity of the solicitor or the cause for which he is soliciting charitable donations, there is no standard in this ordinance by which it can be determined whether "the total costs and expenses of such solicitation are not disproportionate to the sum proposed to be collected thereby." In *Matter of Application of Dart, supra,* the opinion of Justice Henshaw notes that the municipality could not require the charity to expend all its funds within the city as a condition of securing a permit to solicit. He observed, "And it will be found better in the long run that the free exercise of religion be preserved in its integrity, better for the nation, better for charity itself which owes so much to religion, even if the efficiency of religious charities be not up to the standard of perfection set by the Municipal Charities Commission. If, under that standard, seventy-five cents of every dollar would go to the objects of charity, while under the less efficient methods in vogue but fifty cents of each dollar actually reaches the beneficiaries, it is not to be forgotten that there will be many millions fewer of these dollars to be distributed in charity if the activities of the religious are hampered, thwarted, and stayed." (172 Cal. at p. 56.) If efficiency is to be measured, it must be by a tangible standard.

Finally, insofar as the ordinance in section 4329 purports to confer discretion in the commission to waive some of the requirements of the ordinance "where the applicant is known to be *a bona fide charitable*

*organization of recognized* integrity and long standing reputation as such," (italics added) the ordinance again runs into the uncertainty condemned in *Hynes* v. *Mayor of Oradell, supra* (425 U.S. at p. 621 [48 L.Ed.2d at p. 253]. See also *Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, 661).

We conclude that on its face the ordinance is too vague to constitute a constitutionally permissive control of charitable solicitation.

The judgment of the superior court is reversed and the case is remanded with directions to issue a peremptory writ of prohibition commanding the respondent municipal court to refrain from further proceedings in the actions specified in the petition, pending against petitioners, other than to dismiss the same.

Elkington, J., and Lazarus, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.