454 F.Supp. 116 (1978)
INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF BERKELEY, INC. and Carol Ulery, on behalf of themselves and all International Society for Krishna Consciousness members, Plaintiffs,
v.
Jack KEARNES, Sacramento Police Chief, James P. Jackson, Sacramento City Attorney, Duane Lowe, Sacramento Sheriff, John M. Price, Sacramento County District Attorney, Individually and in their official capacities, Defendants.
Civ. No. S-77-468.
United States District Court, E. D. California.
April 27, 1978.
*117 Barry A. Fisher, Beverly Hills, Cal., Michael Rothschild, Blease, Vanderlaan & Rothschild, Sacramento, Cal., for plaintiffs.
Theodore H. Kobey, Jr., Asst. City Atty., Thomas W. Fenner, Deputy City Atty., Sacramento, Cal., for defendants Kearnes and Jackson.
*118 John B. Heinrich, County Counsel, Robert L. Pleines, Deputy County Counsel, County of Sacramento, Sacramento, Cal., for defendants Duane Lowe and John M. Price.

MEMORANDUM AND ORDER
PECKHAM, Chief Judge.
Plaintiff, International Society for Krishna Consciousness of Berkeley, Inc. ("ISKCON"), has brought this action on behalf of itself and its members seeking both a declaration that Sacramento city ordinance No. 2967 and Sacramento county ordinance §§ 5.64.010 et seq. are unconstitutional, and a permanent injunction restraining the enforcement of these laws against it. Essentially, these ordinances require each individual solicitor to obtain a permit from the proper governmental authority before making charitable solicitations within Sacramento city or county. The defendants are the Sacramento Chief of Police, Jack Kearnes, the Sacramento Sheriff, Duane Lowe, and the Sacramento County District Attorney, John V. Price. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(3) and 1343(4). The case is presently before us on the plaintiff's motion for a preliminary injunction.
In considering plaintiffs' motion for a preliminary injunction, one must review two sets of standards; if either set is satisfied, the injunction may issue. First, we must consider whether (1) the plaintiff will suffer irreparable harm if the relief is not granted, (2) plaintiff is likely to prevail on the merits, (3) defendant will not be harmed more than plaintiff is helped by the issuance of an injunction, and (4) the injunction is in the public interest. The second test is whether serious questions are raised on the merits and the balance of hardships tips sharply in plaintiff's favor. William Inglis and Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86 (9th Cir. 1975). In applying both of these tests, we will first consider the issues raised and the likelihood of success on the merits and then proceed to the remaining factors.
The plaintiffs allege that these ordinances are unconstitutional in that they deprive plaintiffs of rights guaranteed under the First and Fourteenth Amendments. ISKCON is a religious organization whose members, as part of their religion, seek to distribute religious materials and solicit funds in Sacramento. This missionary aspect of the religion, known as Sankirtan, is more fully described in ISKCON v. Conlisk, 374 F.Supp. 1010 (W.D.Ill.1973), ISKCON v. New Orleans, 347 F.Supp. 945 (E.D.La. 1972), ISKCON v. Englehardt, 425 F.Supp. 176 (D.Kan.1977) and ISKCON v. Rochford, 425 F.Supp. 734 (N.D.Ill.1977). There is no question but that the religious ritual of the Sankirtan, the dissemination of religious tracts in combination with a request for donations, is within the protection of the First Amendment. Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Cantwell v. Connecticut, 310 U.S. 296, 304-5, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Martin v. Struthers, 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). Similarly, plaintiff may raise the question of the statute's facial constitutionality without having applied for a permit. Lovell v. City of Griffin, 303 U.S. at 452, 60 S.Ct. 146; Schneider v. State, supra; Cantwell v. Connecticut, supra; Murdock v. Pennsylvania, supra; Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Hynes v. Mayor of Oradell, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).
The two ordinances in question are identical in all relevant respects. Adopted in response to legislative findings that frauds were being perpetrated on the Sacramento citizenry by persons presenting themselves as soliciting for charities, the ordinances establish a permit system to regulate such solicitations. A Charitable Solicitations Committee is established with the power to issue permits for all charitable solicitations. It is unlawful to solicit without a permit. Any person seeking to solicit for any charitable purpose, except where the solicitation occurs solely among the members of the *119 soliciting organization, is conducted by an employer among his employees, or takes place at an assembly or service, is required to submit a permit application to the committee containing certain specified information. The committee is then required to review the application and either deny or issue a permit for solicitation. In passing upon the application the committee is instructed by the ordinances to consider ten criteria, most of which are designed to reveal possible fraudulent intent. If any of the criteria are found to be unsatisfied, the permit must be denied. This aspect of the permit procedure is discussed at length below. If the committee issues a permit, its duration may not exceed 90 days. The permit may be renewed at the end of the period, and it can be revoked at any earlier time.
The ordinances do not attempt to regulate the time, manner and place of the exercise of First Amendment rights in order to accommodate both the rights of those seeking to solicit and collateral state interests such as traffic control. The ordinances do not require that an individual obtain a permit in order to control the times during which solicitations are made or the locations at which solicitations are made. Permits are not required to control the number of persons soliciting in a given area. On the contrary, the purpose of the permit system is to regulate the content of speech, denying permits to solicit to those "likely" to perpetrate frauds and making solicitation without a permit illegal. The legislative intent unequivocally demonstrates that the purpose of the ordinances is to restrain those persons who are "likely" to commit frauds from soliciting. The critical index in ascertaining who is to be granted a permit and who is to be denied is the type of speech in which one will "probably" engage. Permits are issued only to those persons who, based on the criteria in the ordinances as applied by the committee, will not engage in fraudulent activity. If the committee finds that a permit should not be issued, then the applicant cannot solicit without violating the law, regardless of whether his solicitation is in fact fraudulent. An individual is totally restrained from solicitation if he does not have a permit. On the basis of these facts, we conclude that the ordinances operate as a prior restraint on the exercise of speech, restraining its exercise in advance of its invocation based upon the finding that the speech to be engaged in will be fraudulent.
As a general rule, a statute which seeks to restrain speech requires that there be a "clear and present danger" that a substantial evil will result, American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950), or more precisely, "the gravity of the `evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger," Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L.Ed. 1137 (1950). In addition, such statutes are constitutionally permissible only if there exists no less drastic means of protecting the interest of the state. Carrol v. Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).
The central concern underlying the doctrine of prior restraint is censorship. Prior restraint of speech based upon a belief as to its probable content involves a determination by the state of what is proper speech, and courts have jealously protected the First Amendment against such intrusion by the state except in very limited circumstances. The First Amendment was adopted in large part to avoid such restraint and the attendant evil of censorship, Lovell v. City of Griffin, 303 U.S. at 451-52, 60 S.Ct. 146, and as such any system of prior restraint bears "a heavy presumption against its constitutional validity," Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).
To sustain an attack against its constitutionality, a statute which constitutes a prior restraint must seek to restrain only speech which is unprotected, and must *120 be designed in such a fashion as to filter out those who will engage in protected speech from those who will engage in unprotected speech, restraining only the latter. The margin of error permissible in this filtering process is directly related to the severity of the harm sought to be avoided. If the restraint operates through a permit system or other form of state permission, as in the present case, the criteria for obtaining a permit must be strictly limited in order to protect against administrative officials arbitrarily denying permits to those who would engage in protected speech. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); Shuttleworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); Staub v. City of Baxley, supra; Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); Cantwell v. Connecticut, supra; Schneider v. State, supra. In addition, the system of issuing permits or granting state permission must be ringed with adequate procedural safeguards that persons seeking to engage in protected speech will not be wrongfully restrained for an excessive time by an improper administrative decision. Southeastern Promotions, Ltd. v. Conrad, 420 U.S. at 559, 95 S.Ct. 1239; Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); LeFlore v. Robinson, 434 F.2d 933 (5th Cir. 1970) vacated on other grounds, 446 F.2d 715 (5th Cir. 1971); Collin v. Chicago Park District, 460 F.2d 746 (7th Cir. 1972); Snyder v. Board of Trustees of the Univ. of Illinois, 286 F.Supp. 927 (N.D. Ill.1968).
A long line of cases has held prior restraints unconstitutional because the speech sought to be restrained was in fact protected. In Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), the petitioner had been found in contempt for violation of an injunction restraining him from soliciting members for a union without first obtaining an organizer's card. The Supreme Court reversed the conviction, finding:
The statements forbidden were not themselves unlawful, had no tendency to incite to unlawful action, involved no element of clear and present danger to the public welfare . . . [323 U.S. at 536, 65 S.Ct. at 325.]
If the exercise of the rights of free speech and free assembly cannot be made a crime, we do not think this can be accomplished by the device of requiring previous registration as a condition for exercising them and making such a condition the foundation for restraining in advance their exercise and for imposing a penalty for violating such a restraining order.
323 U.S. at 540, 65 S.Ct. at 327. The prior restraints in New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) and Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), were found unconstitutional for the same reason; the speech to be engaged in was protected.
In the present case we need not be troubled with the question of whether the city or county may permissibly punish the activities for which they have manifested concern, for such fraudulent solicitations clearly may be proscribed and punished by criminal statute.
In a second line of cases, permit requirements and other forms of governmentally imposed prior restraints have been held unconstitutional even though the speech sought to be restrained was unprotected. In these cases the infirmity was the fact that the system of restraints operated in such a fashion that both protected and unprotected speech would be restrained, and thus some persons would be wrongfully denied the exercise of their constitutional rights. An early case demonstrating this point was Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), in which a court, pursuant to a state statute, had issued an injunction against the publishing of a newspaper after finding that the paper constituted a "public nuisance" by printing "malicious, scandalous and defamatory" articles. *121 The Supreme Court vacated the injunction, finding it to be a prior restraint. It seems clear that the Court's major concern was the denial of future speech based on past "abuse," and that the showing of past abuse of First Amendment rights did not sufficiently support the conclusion that there would be future abuse.
In Lovell v. City of Griffin, supra, the Supreme Court considered a municipal ordinance requiring written permission from the City Manager in order to distribute literature of any kind, whether or not for sale. Plaintiff, a Jehovah's Witness, attempted to distribute a religious pamphlet without first having sought permission and was fined $50. The Court found the municipal system unconstitutional on its face as constituting a prior restraint on protected speech. Similarly, a municipal statute requiring that those persons seeking to solicit door to door must obtain the permission of the Chief of Police, and mandating that the Chief deny such permission to those "not of good character" or found to be canvassing for a project "not free of fraud," was found unconstitutional in Schneider v. State, supra. The Court held that by vesting such discretion in the Chief of Police, the constitutionally protected rights of individuals were threatened by the potential for abuse of that discretion. The Court also stated, however, that the interest in preventing fraud might accommodate some kind of restrictions:
Conceding that fraudulent appeals may be made in the name of charity and religion, we hold a municipality cannot, for this reason, require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say some ideas may, while others may not, be carried to the homes of citizens; some persons may, while others may not, disseminate information from house to house. Frauds may be denounced as offenses and punished by law. Trespasses may similarly be forbidden. If it is said that these means are less efficient and convenient than bestowal of power on police authorities to decide what information may be disseminated from house to house, and who may impart the information, the answer is that considerations of this sort do not empower a municipality to abridge freedom of speech and press.
We are not to be taken as holding that commercial soliciting and canvassing may be subjected to such regulations as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasion of constitutional liberty.
308 U.S. at 164-65, 60 S.Ct. at 152.
A permit statute was also found unconstitutional in Cantwell v. Connecticut, supra, where the ordinance required a council to determine whether the cause for which donations were being solicited was religious or a bona fide object of charity. The Court stated that allowing the officials to determine what constituted a religion created a threat to the liberty of the populous to freely exercise the rights guaranteed by the First Amendment.
The list of cases striking down similar statutes is extensive,[*] and the continued vitality of their principle has been demonstrated in three recent cases before the Supreme Court. In Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), an organization accused of invading the privacy of a real estate broker through leaflet distribution was temporarily enjoined from further leafletting. The Supreme Court vacated the injunction, finding that it brought within its scope all literature and thus restrained the exercise of protected activity. The injunction *122 did not seek to redress wrongs, "but to suppress, on the basis of previous publications, distribution of literature." Presumably, the demonstration of past abuse was not sufficiently persuasive to show that the parties, in all future leafletting, would engage in unprotected speech. In Southeastern Promotions, Ltd. v. Conrad, supra, a theatrical group applied to use a municipal theatre for a production of "Hair," but permission was denied because the directors of the auditorium had received reports that the play involved nudity and obscenity. The actions of the directors constituted an unlawful prior restraint in the opinion of the Court, for the directors exercised virtually unbridled discretion in granting or denying permission to express oneself in a public forum. As was demonstrated by what had already occurred, they thus could act as censors of expression, restraining individuals seeking to exercise their freedom of speech. Keeping the play from being presented, rather than prosecuting for violations after the production, amounted to the imposition of a prior restraint. This was impermissible because the decision denying access did not take place within a system of procedural safeguards insuring that only unprotected speech was restrained, but rather the decision was left to the unfettered discretion of the administering officials.
Recently, the Supreme Court reviewed a municipal ordinance which required advance notice to the police by any person seeking to canvass, solicit or call on a house-by-house basis for a recognized charity or political campaign (Hynes v. Mayor of Oradell, supra). The notice was to be in writing and required only identification. The Court stated that the government could permissibly regulate this area of conduct, but that the regulation must be narrowly drawn. This ordinance was held unconstitutionally vague because it did not identify with sufficient clarity a "recognized charitable cause" or spell out what was required for "identification" or "notification." This vagueness, and the lack of clear criteria to be applied in granting a permit, provided the police with the effective power of censorship. A person seeking only to engage in protected speech might be restrained or punished under this ordinance, and therefore the ordinance was held unconstitutional.
In each of the instances in this second line of cases, the state could have permissibly punished an individual engaging in the speech against which the ordinance was intended, for such speech was unprotected. Yet, in each instance the state was unable to show that the ordinance adequately distinguished between those seeking to engage in protected activity and those who were not. Since the statutes thus operated to wrongfully restrain some persons who merely sought to exercise their constitutional rights, they were found unconstitutional.
The problem of prediction is the key to the doctrine of prior restraint. For example, prior restraints are permissible to a limited extent in obscenity cases because one knows the content of the speech before it takes place. In most instances, however, one cannot know precisely what activity an individual will pursue, and thus any system which conditions the right to speak upon a finding of whether or not the individual is likely to engage in protected speech generally will involve a significant margin of error such that some persons will be wrongfully restrained from exercising their constitutional rights, while others are permitted to engage in proscribed activity. Within this margin of error, the officials administering the system will have latitude to exercise their judgment and discretion. Necessarily, the possibility of censorship is introduced and First Amendment guarantees threatened.
In a case very similar to the present one the Supreme Court stated:
Approval of the application depended upon the board's affirmative action. Approval was not a matter of routine; instead, it involved the "appraisal of facts, the exercise of judgment, and the formation of an opinion; by the board."
Southeastern Promotions, Ltd. v. Conrad, 420 U.S. at 554, 95 S.Ct. at 1244.

*123 The presumption against prior restraints is heavier  and the degree of protection broader  than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.
Southeastern Promotions, Ltd. v. Conrad, 420 U.S. at 558-59, 95 S.Ct. at 1246.
In order to support a restraint, the Supreme Court has looked to whether there existed a clear and present danger that a substantive evil would result, American Communications Association v. Douds, supra, or whether the gravity of the evil to be avoided, discounted by the likelihood it will not occur, justified such an invasion of free speech. Dennis v. U. S., supra. At the very least these standards indicate that the state must show a high probability that an individual is about to engage in proscribed speech, especially when the evil to be avoided is fraud, in order to support a system of prior restraint. The Supreme Court manifested this view in Dennis v. U. S., 341 U.S. at 508, 71 S.Ct. at 867:
In this case we are squarely presented with the application of the "clear and present danger" test, and must decide what that phrase imports. We first note that many of the cases in which this Court has reversed convictions by use of this or similar tests have been based on the fact that the interest which the state was attempting to protect was itself too insubstantial to warrant restriction of speech. In this category we may put such cases as Schneider v. State, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] (1939) [and] Cantwell v. State of Connecticut, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213] (1943) . . .
As discussed initially, the basic thrust of the Sacramento city and county ordinances is to prevent fraudulent solicitation by denying a permit to those persons or organizations which fail to satisfy certain criteria. Some of these criteria require a judgment to be made by the committee. A brief discussion of the criteria to be applied under the ordinances makes eminently clear that the high standard of proof required to show that an individual will engage in fraudulent activity is not met here. The criteria which must be satisfied are contained in section 5.64.090 of the county ordinance and section 10.38 of the city ordinance. Since the two are identical, only one is reproduced:
5.64.090 STANDARDS FOR ACTION IN GRANTING OR DENYING PERMITS. The committee shall issue the permit with or without conditions, whenever it appears to each of the members of the committee that the following facts exist:
(a) That all of the statements made in the application are true;
(b) That the applicant, and every director, officer, manager, promoter, consultant, and other agent of the applicant, has a good reputation for integrity and responsibility;
(c) That the applicant, and the persons who are to control, supervise and promote the solicitation on behalf of the applicant, have not knowingly violated the provisions of this chapter in the conduct of any prior solicitation;
(d) That the applicant has not engaged in any fraudulent transactions or enterprises which the committee deems relevant to the application;
(e) That the solicitation will not be a fraud on the public;
(f) That the solicitation is prompted solely by the desire to finance the charitable cause described in the application, and will not be conducted for private profit;
(g) That the cost of raising funds will be reasonable;

*124 (h) That, if a promoter or promoters will conduct all or any part of the solicitation, the provisions of Section 5.64.180 hereof have been complied with;
(i) That the proposed method or methods of soliciting will not be contrary to the provisions of this chapter; and
(j) That the applicant is maintaining an adequate system of record keeping and accounting, and has agreed to make such available to the committee or its designees for inspection. (SCC 34 § 2 (part), 1971).
An untruthful statement does not necessarily lead to the conclusion that the applicant is going to engage in fraudulent solicitation, for he may have other totally unrelated reasons for concealing certain items of information regarding himself, or he may have made an honest mistake. Neither does a bad reputation for integrity or responsibility, prior violation of any portion of the ordinance, any prior fraudulent transaction "deemed relevant" or an "unreasonable" cost of solicitation necessarily mean that the applicant is attempting to perpetrate a fraud. While these factors might raise a reasonable suspicion if they were all present, the existence of any one, a condition which results in denial of the permit, certainly cannot satisfy the high standard of proof required. Additionally, the fact that the applicant has not complied with all requirements of the ordinance, or that solicitation does not proceed according to the ordinance, or that the applicant maintains an "inadequate" bookkeeping system, does not appear to materially bear on the question of whether the applicant is likely to pursue a fraudulent course of behavior. Little more need be said. The standard of proof utilized in the ordinances is woefully inadequate to meet the constitutional requirement.
Even if the nexus between the factors considered and the likelihood of engaging in proscribed speech were sufficiently close, we would entertain severe doubts as to the constitutionality of the criteria. The Supreme Court has considered and disapproved of conditions similar to subsections (c) and (d) of these ordinances in Near v. Minnesota, supra, and Organization for a Better Austin v. Keefe, supra. Requirements similar to subsections (b) and (e) were rejected in Schneider v. State, supra. Furthermore, the ordinances do not contain the due process safeguards required under Freedman v. Maryland, supra. However, we do not reach these issues at this time because it is sufficient for present purposes that we find that the plaintiff has demonstrated a strong probability that the ordinances in question are unconstitutional as prior restraints upon the free exercise of rights guaranteed by the First and Fourteenth Amendments.
This court is not unmindful of the problems presented by fraudulent solicitations and the interest of the state in protecting its citizenry from their perpetration. However, the constitutional protections afforded free speech limit the actions which the state may undertake to restrain individuals from engaging in such activity. The state remains free to punish those who abuse their privilege by committing frauds, and to thus deter such behavior. In addition, to aid in the apprehension of those who have gone outside the bounds of the law, the state may constitutionally require those wishing to solicit to identify themselves to the governmental authorities, Cantwell v. Connecticut, 310 U.S. at 306, 60 S.Ct. 900; Schneider v. State, 308 U.S. at 164, 60 S.Ct. 146; Martin v. Struthers, 319 U.S. at 148 n. 14, 63 S.Ct. 862; Thomas v. Collins, 323 U.S. at 527 n. 11, 539, 65 S.Ct. 315, so long as the statutory requirements are sufficiently precise, Hynes v. Mayor of Oradell, supra.
We must now consider the remaining criteria of the tests outlined initially in order to ascertain whether a preliminary injunction is appropriate in this case. In light of our view that there is a substantial likelihood that plaintiffs will prevail on the merits, it is clear that plaintiffs will suffer irreparable harm if the injunction does not issue. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Similarly, since it is most likely the case that plaintiffs *125 are being deprived of their constitutional rights and the state cannot permissibly further its interests by means of these ordinances, we find that defendants will be harmed less than plaintiffs are benefitted by an injunction. We also find that an injunction would be in the best interests of the public, for the protection of constitutional rights is always in the public interest. Therefore, by the first test a preliminary injunction may issue.
Alternatively, applying the second test, we find that serious questions are raised on the merits of the case in light of the previous discussion, and taking into consideration that the issues presented strike at the heart of the First Amendment. The central question in this suit is the degree to which the state can invade the protection afforded by the First Amendment in order to further legitimate governmental interests. There can be no doubt that this is the type of issue which quite often calls for the issuance of a preliminary injunction. Since we conclude that the ordinances most likely deprive plaintiffs of the protection of the First Amendment, we also find that the balance of hardships tips sharply in plaintiffs' favor. The protection of First Amendment rights weighs heavily in the balancing of harms, for the protection of those rights is not merely a benefit to the plaintiffs but to all citizens. Thus, the requirements of the second test are also met.
Therefore, both tests being satisfied, we hereby order that the City of Sacramento is preliminarily enjoined from the enforcement of ordinance No. 2967, and the County of Sacramento is preliminarily enjoined from the enforcement of ordinance §§ 5.64.010 et seq. against the plaintiffs, International Society for Krishna Consciousness of Berkeley, Inc.
IT IS SO ORDERED.
NOTES
[*] Shuttlesworth v. Birmingham, supra; Staub v. City of Baxley, supra; Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Kunz v. New York, supra; Niemotko v. Maryland, supra; Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); Largent v. Texas, supra.