[Civ. No. 4030. Fifth Dist. Nov. 5, 1980.]

DONALD HILLMAN et al., Plaintiffs and Appellants, v.
H. E. BRITTON, as Chief of Police, etc., et al.,
Defendants and Respondents.

COUNSEL

Barry A. Fisher, Robert C. Moest, Henry & Missirlian and James Vance Henry for Plaintiffs and Appellants.

James A. McKelvey, City Attorney, and Jeanne L. Winslow, Deputy City Attorney, for Defendants and Respondents.

OPINION

PIERSON, J.*—This case presents an appeal from a "Ruling on Application for Preliminary Injunction" which denied appellants' request for a preliminary injunction against enforcement of Fresno Municipal Code section 6-701 et seq.

*Assigned by the Chairperson of the Judicial Council.

Appellant Donald Hillman is the president and minister of the Little Country Church, a charter of the Universal Life Church, Inc., a California nonprofit religious corporation.

Donald Hillman and his wife Grace sought to engage in charitable solicitations and solicitations to support their church and charitable work of their church. They pursued that endeavor without first having applied for or obtained a license to solicit pursuant to Fresno Municipal Code section 6-701 et seq. (hereinafter referred to as Fresno ordinance) governing charitable and religious solicitation. Their efforts to obtain monetary support for their intendments were interrupted by the threat of criminal action. The Fresno ordinance requires a license issued by the Fresno City Controller in order to engage in most religious or charitable solicitations. Violators are subject to misdemeanor prosecution.

The Hillmans filed a complaint which embodied a civil rights suit to enjoin enforcement of the Fresno ordinance. They alleged the law is unconstitutional and requested a preliminary injunction preventing enforcement of the solicitation licensing law pending trial on the complaint. Following a hearing the request for preliminary injunction was denied.

In its ruling denying the preliminary injunction, the trial court noted that upon proper application the controller must issue a permit unless he finds the existence of one or more of ten listed "facts" justifying rejection of an application. The court stated that while some of those 10 facts might not meet constitutionally acceptable standards, others in the list set constitutionally acceptable standards and held the statute valid on its face. A review of the decisions construing the constitutionality of similar licensing laws leads us to the unavoidable conclusion that the preliminary injunction should have been granted.

### APPELLANTS HAVE STANDING TO ATTACK THE CONSTITUTIONALITY OF THE FRESNO SOLICITATION LICENSING LAW

Respondents contend that appellants have no standing to bring this action as they never applied for or were denied a license to solicit, nor were they under arrest for engaging in solicitation without a permit.

In *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281], the petitioners sought a writ of prohibition to re-

strain the court from proceeding with a trial in which they were charged with a violation of a municipal code prohibiting the exhibition of theater films to the public without a permit. The board charged with issuance of such permits (board of police commissioners) contended petitioners lacked standing in the absence of a rejected application for a permit. In holding that such an antecedental procedure is not essential to challenge such a statute, the court stated: "It is settled that a person has the standing to challenge a statute on the ground that it delegates overly broad licensing authority to an administrative officer whether or not his conduct could be proscribed by a properly drawn enactment and whether or not he has applied for a license. One who could have obtained a license for the asking may call into question the whole scheme of licensing when he is prosecuted for failure to procure it. Standing is recognized in such a situation because of the dangers inherent in tolerating, in the realm of the First Amendment, the existence of a penal statute susceptible of sweeping and improper application. (*Freedman* v. *Maryland* (1965) 380 U.S. 51, 56 [13 L.Ed.2d 649, 653, 85 S.Ct. 734]; *Staub* v. *Baxley* (1958) 355 U.S. 313, 319 [2 L.Ed.2d 302, 309-310, 78 S.Ct. 277]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 97 [84 L.Ed. 1093, 1099-1100, 60 S.Ct. 736].)" (*Id.* at p. 688; see also, *Perlman* v. *Municipal Court* (1979) 99 Cal.App.3d 568, 575 [160 Cal.Rptr. 567].)

*Aaron* v. *Municipal Court* (1977) 73 Cal.App.3d 596 [140 Cal.Rptr. 849], presented a situation in which petitioners sought a writ of prohibition prohibiting prosecution for violation of a municipal ordinance which prohibited charitable solicitations without a permit. In noting that petitioners' standing to contest the constitutionality of the statute was unchallenged, the court remarked: "A person faced with an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license, and he is not precluded from attacking its constitutionality because he has not applied for a permit. (*Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 151, and cases cited fn. 2 [22 L.Ed.2d 162, 167, 89 S.Ct. 935]; *Freedman* v. *Maryland* (1965) 380 U.S. 51, 55-56 [13 L.Ed.2d 649, 652-653, 85 S.Ct. 734]; *Staub* v. *City of Baxley* (1958) 355 U.S. 313, 318-319 [2 L.Ed.2d 302, 308-309, 78 S.Ct. 277]; and *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 687-688 [68 Cal.Rptr. 721, 441 P.2d 281].)" (*Id.* at p. 599, fn. 2.)[1]

---

[1]All of the cases cited in support of this broad proposition involved an appeal from a conviction or pending prosecution.

In *People* v. *Fogelson* (1978) 21 Cal.3d 158 [145 Cal.Rptr. 542, 577 P.2d 677], appellant, who belonged to the Hare Krishna faith, was convicted of soliciting contributions on public property (Los Angeles International Airport) without a permit. The city attorney contended appellant did not have standing to challenge the constitutionality of the ordinance because he had not applied for a permit as the ordinance required. The Supreme Court found no merit in the city's argument: "'It is...settled that petitioners have standing to attack the constitutional validity of [an] ordinance which they are charged with having violated even though they have failed to allege that they attempted to comply with its permit requirement. (*Dillon* v. *Municipal Court, supra*, 4 Cal.3d 860, 866 fn. 6 [94 Cal.Rptr. 777, 484 P.2d 945], and cases collected therein; see also *Burton* v. *Municipal Court, supra*, 68 Cal.2d 684, 687-688 [68 Cal.Rptr. 721, 441 P.2d 281].) "Standing is recognized in such a situation because of the dangers inherent in tolerating, in the realm of the First Amendment, the existence of a penal statute susceptible of sweeping and improper application. [Citations.]"...'" (*Id.* at pp. 162-163, fn. 3.)

Threat of imminent criminal prosecution was claimed in *Dombrowski* v. *Pfister* (1965) 380 U.S. 479 [14 L.Ed.2d 22, 85 S.Ct. 1116]. There plaintiffs sought declaratory relief and an injunction to restrain certain government officials from prosecuting or threatening to prosecute plaintiffs for alleged violations of the Louisiana Subversive Activities and Communist Control Law. Their complaint was dismissed in the district court. The United States Supreme Court reversed holding the act's language to be broad, vague and uncertain. The court noted as follows: "Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser. [Citation.] For example, we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. [Citations.] We have fashioned this exception to the usual rules governing standing, see *United States* v. *Raines, supra*, because of the '...danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' [Citation.] If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those

hardy enough to risk criminal prosecution to determine the proper scope of regulation...." (*Id.* at pp. 486-487 [14 L.Ed.2d at pp. 28-29].)

In *Bradley* v. *Sparks* (C.D.Cal. Sept. 2, 1977) Civ. 77-3019 (unpub. opn.),[2] the federal district court granted a preliminary injunction against enforcement of the Laguna Beach, California Municipal Code, chapter 5.20, which prohibited religious solicitations in public places without a permit. The six plaintiffs, members of Krishna Consciousness, never applied for a permit and were advised that to engage in solicitation would subject them to arrest and prosecution. Plaintiffs desisted and were never arrested. The court held that plaintiffs had standing whether or not their conduct could be proscribed by a properly drawn ordinance and whether or not they ever applied for a permit.

In the instant case, the threatened prosecution or arrest of appellants if they assert their First Amendment rights constitutes an adequate showing of irreparable injury. We find they have standing to request injunctive relief.

### FIRST AMENDMENT PROTECTIONS ENCOMPASS CHARITABLE SOLICITATIONS

■ Several state and federal decisions have well established the application of First Amendment protections to charitable solicitations.

In *Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610 [48 L.Ed.2d 243, 96 S.Ct. 1755], the United States Supreme Court held that a New Jersey municipal canvassing and solicitation ordinance was unconstitutionally vague. The ordinance required that advance written notice be given to the local police department by any person desiring to canvass, solicit or call from house to house for a recognized charitable cause, or for a federal, state, county or municipal political campaign or cause.

The *Hynes* appellants were a political candidate and three voters who claimed that the ordinance would unconstitutionally restrict their political canvassing and campaigning. The Supreme Court found the ordinance vague in that its coverage was unclear and it failed to sufficiently specify what those within its reach must do in order to comply.

---

[2]Rule 977 of the California Rules of Court prohibits citation of unpublished opinions of Courts of Appeal or appellate departments of the superior courts in most circumstances. Unpublished federal authority is not proscribed.

Insofar as is relevant here, the ordinance covered persons soliciting for a *"recognized* charitable cause." The Supreme Court found this language unclear because "it does not explain, for example, whether a *'recognized* charitable cause' means one recognized by the Internal Revenue Service as tax exempt, one recognized by some community agency, or one approved by some municipal official...." (*Id.*, 425 U.S. at p. 621 [48 L.Ed.2d at p. 253].)

The underlying premise of *Hynes* is that charitable solicitation is a form of First Amendment activity. While the action arose in the context of the political activities in which the appellants wished to engage, the Supreme Court specifically invalidated as vague provisions regulating charitable solicitation.

Respondents' contention that charitable solicitation is not constitutionally protected speech was settled recently in the United States Supreme Court decision *Schaumburg* v. *Citizens, Etc.* (1980) 444 U.S. 620 [63 L.Ed.2d 73, 100 S.Ct. 826]. The case considered a village ordinance requiring charitable organizations which solicit or intend to solicit contributions by door-to-door solicitation or by use of public streets and public ways to first obtain a license. Citizens for a Better Environment brought suit against the village seeking declaratory judgment and an injunction. The federal district court entered summary judgment for plaintiffs. Upon appeal the Supreme Court held the ordinance unconstitutionally overbroad in violation of the First and Fourteenth Amendments.

After discussing *Hynes* and a number of other federal cases dealing with door to door solicitations, the Supreme Court in *Schaumburg* stated: "Prior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues, and for the reality that without such solicitation the flow of such information and advocacy would likely cease...." (*Id.* at pp. 833-834 [63 L.Ed.2d at p. 84].)

"The issue before us, then, is not whether solicitations in residential neighborhoods are within the protection of the First Amendment. It is clear that they are. '[O]ur cases long have protected speech even though it is in the form of . . . a solicitation to pay or contribute money, [citation].' . . ." (*Id.* at p. 834 [63 L.Ed.2d at p. 85].)

### THE FRESNO SOLICITATION LICENSING ORDINANCE VIOLATES PROCEDURAL DUE PROCESS

■    Appellants contend that the subject ordinance violates due process because it does not contain the procedural safeguards required by *Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734], and its progeny. Respondents assert that the exact requirements of *Freedman* need not be followed and that the subject ordinance comports with procedural due process because it affords prompt notice and an appropriate mode of review.

*Freedman* invalidated the Maryland motion picture censorship statute. The United States Supreme Court began with the premise that any system of prior restraints of First Amendment expression bears a heavy presumption of unconstitutionality. The court decided as follows: "Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. First, the burden of proving that the film is unprotected expression must rest on the censor. . . . Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. [Citations.] To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying

the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See *Bantam Books, Inc.* v. *Sullivan, supra.* Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." (*Id.* at pp. 58-59 [13 L.Ed.2d at pp. 654-655].)

As summarized by respondents, the Fresno ordinance involves this procedural framework after the controller denies a permit: "First, the decision made by the Controller requires that written findings of fact be made, and that the applicant be notified both of the denial and the right to appeal to the Public Appeals Board. FMC §6-706(b).

"Second, an appeal to the Board, if made within fifteen days from the date of service of the denial, requires that a hearing be set ten to thirty days from the date of filing the appeal. FMC §6-709(c). Written findings of fact must then be rendered by the Board within ten days from the conclusion of the hearing and served upon the appellant. FMC §6-709(g).

"Third, appellant may achieve judicial review of the administrative decision by submitting a petition for writ of mandate."

The ordinance sets no time limit within which the licensor must grant or deny the permit. It contains no procedures requiring the licensor to institute judicial proceedings to establish that the proposed solicitation is unprotected, and there is no assurance of prompt judicial determination on the merits.

Without calculating the open ended time frame which the ordinance allows for the initial decision to grant or deny a permit, the applicant faces a delay of from 21 to 55 days before he can institute judicial proceedings. The city exclusively controls 40 of those days.

*Freedman* is not limited to censorship cases. Such a limitation was expressly rejected in *Slate* v. *McFetridge* (7th Cir. 1973) 484 F.2d 1169, which held that the defendant's failure to give immediate notification that a permit would not be issued for· a political rally denied plaintiffs' due process right to a prompt resolution of the request for a permit. The court stated: "Few would argue with the basic proposition that the protection of speech and assembly in the context of political parades and demonstrations is an object no less sacred to the First

Amendment than the protection of the cinema from the censor. *See* Blasi, Prior Restraints on Demonstrations, 68 Mich.L.Rev. 1481 (1970). Others, including Mr. Justice Harlan, have gone one step beyond to assert the primacy of First Amendment rights in the former setting. [Citations.] We note, moreover, that in recent decisions both this and the Fifth Circuit proceeded directly from *Freedman* to decide that due process was to be afforded applicants for park permits. [Citations.]

"     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"The makeweight character of defendants' distinctions, coupled with our recognition of the analogous importance in First Amendment terms of movie censorship and the regulation of political demonstrations, compels our conclusion that defendants had notice by *Freedman* that their prompt resolution of Slate's permit request was a dictate of due process in the protection of First Amendment rights." (*Id.* at p. 1176.)

*Freedman* was relied on in *Intern. Soc. For Krishna Consc. v. Rochford* (7th Cir. 1978) 585 F.2d 263, which invalidated certain airport regulations which regulated solicitation of contributions at the Chicago airport. The court held that prompt notice and review proceedings must be included in the regulations themselves (*id.* at p. 272), noting that *Freedman* requires licensing arrangements which impinge upon the free exercise of First Amendment rights must provide strict procedural safeguards. (*Id.* at p. 271.)

Whether or not the *Freedman* safeguards apply as such, the Fresno ordinance denies due process in that it does not assure that ". . . persons seeking to engage in protected speech will not be wrongfully restrained for an excessive time by an improper administrative decision. . . ." This due process requirement was articulated in another solicitation case, *Intern. Soc. for Krishna, etc.* v. *Kearnes* (E.D.Cal. 1978) 454 F.Supp. 116, 120. As authority, the court relied on, inter alia, *Freedman* and *Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546, 559-562 [43 L.Ed.2d 448, 459-461, 95 S.Ct. 1239], which applied *Freedman* standards to the denial of an application to present a musical production at a city theatre.

Under the Fresno ordinance, there is no limitation on the time within which the controller shall approve or deny an application for a license to solicit. On appeal from a denial by the controller, a license applicant

can be forced to wait 40 days before he can even begin judicial proceedings in the event the license is denied by the controller and the appeals board. (See *Teitel Film Corp.* v. *Cusack* (1968) 390 U.S. 139, 141-142 [19 L.Ed.2d 966, 968-969, 88 S.Ct. 754], interval of 50 to 57 days before final administrative censorship action was disapproved, did not satisfy *Freedman.*)

We do not decide whether the exact procedures of *Freedman* apply to a solicitation ordinance. At a minimum, due process requires a prompt administrative decision on an application for a license and reasonably prompt access to the courts. The existing ordinance provides neither.

THE FRESNO ORDINANCE VIOLATES SUBSTANTIVE DUE PROCESS

■ Appellants contend that the subject ordinance denies substantive due process in that it fails to provide narrow, objective standards to guide the controller's decision whether to grant or deny a charitable solicitation permit. Respondents implicitly concede that some of the standards are vague but assert that since not all are vague or arbitrary, the unconstitutional standards are severable and therefore the ordinance is not facially unconstitutional.

The Fresno ordinance provides that the controller shall issue a charitable solicitation permit unless he shall find one or more of the following ten specified "standards" set forth in Fresno Municipal Code section 6-706, subdivision (a) (1)-(10) (standards for issuance or denial of charitable solicitations permits): "(1) That one or more of the statements made in the application are not true;

"(2) That the applicant has failed to make available for the inspection of the Controller such of the applicant's books, records and papers as the Controller shall have requested in writing for the purposes provided in Section 6-705.

"(3) That the applicant does not have a good character and reputation for honesty and integrity, or, if the applicant is not an individual person, that the applicant's officers and the persons, including any promoter, who will manage the proposed solicitation are not, or that any of them is not, of good character and reputation for honesty and integrity;

"(4) That the control and supervision of the solicitation will not be under responsible and reliable persons;

"(5) That the applicant has engaged in a fraudulent transaction or enterprise;

"(6) That the solicitation will be a fraud on the public;

"(7) That the solicitation is not prompted solely by a desire to finance the charitable cause described in the application;

"(8) That the cost of raising the funds will be unreasonable. Any such cost, excluding therefrom the cost of goods and services sold, given away, or used as prizes, in excess of fifteen per cent of the amount collected shall be considered to be unreasonable unless special facts are presented showing to the satisfaction of the Controller that peculiar reasons make a cost higher than fifteen per cent reasonable in the particular case;

"(9) That the kind, character, or method of the proposed solicitation, the time when it will take place, or its duration, are such that the solicitation will not be in the interest of and will be inimical to the safety or the general welfare of the inhabitants of the city;

"(10) If a promoter is to conduct all or any part of the solicitation, that the promoter's permit has not been obtained...."

The general rules as to standards appear in *Burton* v. *Municipal Court, supra*, 68 Cal.2d at pages 690-691: "The crucial factor here is our zealous solicitude for rights falling within the protection of the First Amendment. In considering the constitutionality of ordinances in the category of that involved here '"precision of regulation must be the touchstone"' (*Interstate Circuit, Inc.* v. *City of Dallas* (1968) 390 U.S. 676, 982 [20 L.Ed.2d 225, 231, 88 S.Ct. 1298]) and the standards set forth therein must be 'susceptible of objective measurement' (*Keyishian* v. *Board of Regents* (1967) 385 U.S. 589, 603-604 [17 L.Ed.2d 629, 640-641, 87 S.Ct. 675]). Such precision is exacted because the 'threat of sanctions may deter almost as potently as the actual application of sanctions.' (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328].) A long line of decisions has held unconstitutional ordinances governing the issuance of licenses to conduct First Amendment activities where administrative officials were granted excessive discretion in determining whether to grant or deny the license." (See also, *Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 84 [112 Cal.Rptr. 777, 520 P.2d 1]; *Hynes* v. *Mayor of Oradell, supra*, 425

U.S. 610, 617 [48 L.Ed.2d 243, 251]; *Intern. Soc. For Krishna Consc. v. Rochford, supra*, 585 F.2d 263, 267; and *Intern. Soc. For Krishna, etc. v. Kearnes, supra*, 454 F.Supp. 116, 120.)

Appellants specifically attack the standards in Municipal Code section 6-706, subdivisions (a)(3)-(a)(9), inclusive. A review of the authorities shows that most of the challenged standards are unconstitutionally vague.

Identical Sacramento city and county ordinances which established a committee empowered to issue permits for charitable solicitations were challenged in *Intern. Soc. for Krishna, etc. v. Kearnes, supra*, 454 F.Supp. 116. As in the instant ordinance, the license could be refused upon determination by the licensing authority that any of 10 specified standards were found to be unsatisfied. Five of the ten standards were identical or substantially the same as those in Fresno ordinance section 6-706, subdivisions (a) (1), (3), (5), (6) and (7), *supra*. In granting an injunction enjoining the enforcement of the ordinances, the court in essence concluded that the standards were inadequate to meet constitutional requirements. It found that there was a substantial likelihood that plaintiffs would prevail on the merits and that plaintiffs would suffer irreparable harm if the injunction did not issue. (*Id.* at pp. 123-124.)

In *Aaron v. Municipal Court* (1977) 73 Cal.App.3d 596 [140 Cal. Rptr. 849], the San Jose municipal ordinance outlawing charitable solicitations without a license was held too vague to constitute a constitutionally permissible control of charitable solicitation. The ordinance required that a public solicitation commission be satisfied "that such purpose or object of the solicitation is worthy and not incompatible with the public interest"; and that "the applicant and other persons engaged in such solicitation are of good character." Furthermore, there was no standard in the ordinance by which it could be determined, as required by the ordinance, whether "the total cost and expenses of such solicitation are not disproportionate to the sum proposed to be collected thereby." (*Id.* at pp. 607-610.) The terms cited are substantially the same as the "standards" specified in the Fresno ordinance, under section 6-706, subdivisions (a) (3), (8) and (9), *supra*.

In *Hall* v. *McNamara* (N.D.Cal. 1978) 456 F.Supp. 245, the San Jose charitable solicitation licensing law[3] was held unconstitutional, partly because one standard for the grant of a permit was "whether the solicitation 'would be or is being conducted in a fraudulent manner,' . . ." (*Id.* at p. 247.) The court noted that the case law was clear that such a requirement was an unconstitutional basis for the exercise of a licensor's discretion, citing *Cantwell* v. *Connecticut* (1940) 310 U.S. 296, 302, 305 [84 L.Ed. 1213, 1217, 1218, 60 S.Ct. 900]; *Schneider* v. *State* (1939) 308 U.S. 147, 164-165 [84 L.Ed. 155, 166, 60 S.Ct. 146]; and *Intern. Soc. for Krishna, etc.* v. *Kearnes, supra,* 454 F.Supp. at page 121. The court noted as follows: "A licensing authority can never know with any certainty whether a future solicitation is likely to be fraudulent. Thus, any ordinance which conditions the right to speak on whether or not the applicant is likely to engage in protected speech creates a significant risk that some persons will wrongfully be restrained from exercising their constitutional rights." (456 F.Supp. at p. 247.) The standard discussed in the above cited cases is almost identical to Fresno ordinance section 6-706, subdivisions (a) (5) and (6), *supra.*

In *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648], the court held a Los Angeles licensing ordinance invalid because of the vague standards guiding the public licensing authority. The wording of two of the standards was substantially the same as Fresno ordinance section 6-706, subdivisions (a) (3) and (9). *Perrine* held that First Amendment protection invalidated such imprecise standards as the applicant's "good character" or the anticipated effect of his conduct on "public welfare or morals." (*Id.* at pp. 661-662.) *Perrine* cited, among other cases, *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 692, which held the welfare of the public and the personal character of the applicant as unconstitutionally vague standards for refusing a license to engage in First Amendment protected conduct.

Allowing the licensing authority to determine whether an applicant is a "responsible and reliable person" was held to be an unconstitutionally vague standard in *Carolina Action* v. *Pickard* (W.D.N.C. 1979) 465 F.Supp. 576, 582. Fresno ordinance section 6-706, subdivision (a) (4) is an identically vague guideline.

---

[3]This was apparently a revised ordinance rather than the one held unconstitutional in *Aaron, supra.*

Fresno ordinance section 6-706, subdivision (a) (7) is another unconstitutionally vague standard. It would deny a license where "the solicitation is not prompted solely by a desire to finance the charitable cause described in the application." A solicitation for charity may be intended only as a stepping stone to the primary desire to disseminate information or advocate a cause which, although unrelated to the charity, is within the protection of the First Amendment. The discretion to deny a license under the wording of such an overbroad condition is a power uniformly condemned.

The same objection of unconstitutional vagueness applies to the wording in Fresno ordinance section 6-706, subdivision (a) (8) concerning unreasonable costs of raising charity funds. Although the section defines unreasonable costs as those (with exceptions) which exceed 15 percent of the amount collected, it permits the licensing official to issue a license if to his unbridled satisfaction peculiar reasons make a cost in excess of 15 percent reasonable. This is an overbroad delegation of power unconstitutional in its First Amendment dimension.

Section 6-706, subdivision (a) (2) requires an applicant to make available for inspection of the controller such books, records and papers as the controller requests for the purposes provided in section 6-705. The latter section provides in part: "The Controller shall make, or cause to be made, such investigation of the facts stated in the application and of the applicant as he shall deem necessary to perform his duties under this article. . . ." When an ordinance requires disclosure of information, such disclosure must be reasonably related to legitimate objectives of the ordinance. The wide discretion of the controller to grant or deny a license permits sweeping inquiry into unlimited areas to determine whether the applicant falls short of unconstitutionally vague and overbroad standards.

We determine from the cases that the standards provided in section 6-706, subdivisions (a)(1) through (9) possess the same vague, overbroad infirmity. To be constitutionally valid the ordinance must vest no discretion in the licensing official unless that discretion is restrained by clear, definite and objective guidelines. (*Perlman* v. *Municipal Court, supra*, 99 Cal.App.3d 568, 576-577.) Additionally, when such discretion is granted, procedural safeguards must be provided to insure speedy issuance or denial of the application and swift and adequate remedy by appeal. (*Freedman* v. *Maryland, supra*, 380 U.S. at pp. 58-59 [13 L.Ed.2d at pp. 654-655].)

In light of the overwhelming unconstitutionality of subdivisions (1) through (9) of Fresno ordinance section 6-706, respondent's "severability" argument has no merit.

Based on procedural and substantive due process deficiencies in the Fresno ordinance, we conclude that appellants have established a substantial likelihood that they will prevail on the merits of their cause. In light of the constitutional rights repressed it is clear that appellants will suffer irreparable harm if the injunction does not issue.

The judgment of the trial court denying the preliminary injunction is reversed and remanded with directions for the preliminary injunction to issue as prayed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.